**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

BRYAN MASSEY,                                    )
B3COMPANY, LLC,                                  )
                                                 )
    Plaintiffs,              )
                                                 )
v.                                               )
                                                 )  Case No. 25-CV-00187-CDL
A-S MEDICATION SOLUTIONS, LLC,                   )
TODD HATTEN,                                     )
MATT HOFF,                                       )
                                                 )
    Defendants.              )

**OPINION AND ORDER**

Before the Court is the Defendants' Motion to Dismiss Amended Complaint and Brief in Support (the "Motion") (Doc. 21). By the consent of the parties, (Doc. 28 at 4), the undersigned has the authority to grant or deny the Motion in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I. Background

The following factual allegations in Plaintiffs' Amended Complaint are taken as true for purposes of the motion to dismiss. Plaintiff Bryan Massey, sole member of Plaintiff B3Company, (Doc. 7 at 2), alleges that he and his company are owed a percentage of net revenues from a commercial relationship he facilitated between Defendant A-S Medication Solutions, LLC ("ASM"), a provider of pharmaceutical dispensing, and CareATC, a purchaser of such services. In 2017, CareATC terminated its relationship with ASM and began purchasing through a competitor, Northwind. (*Id*. at 2–3). In June of 2022, ASM's Vice President of Business Development, Daniel Hauck, and ASM's Chief Revenue

Officer, Todd Hatten, offered Massey 7% of ASM's net revenues from sales to CareATC for five to ten years if he could "facilitate repairing the former affiliation between ASM and CareATC." (*Id.* at 3). Massey agreed to this arrangement and, in furtherance of this goal, made various communications with CareATC employees and arranged several meetings between CareATC employees and ASM executives, ultimately resulting in CareATC switching back to ASM as its supplier in place of Northwind. (*Id.* at 3–4).

There was no written contract memorializing Massey's compensation agreement as of September 5, 2022, when CareATC informed Massey of its intent to make the switch from Northwind to ASM. (*Id.* at 4). Massey subsequently formed Plaintiff B3Company, LLC for the purpose of entering into an ancticipated written contract with ASM to receive the promised share of net revenues. (*Id.* at 5). The deal between ASM and CareATC ultimately went into effect on October 16, 2023, and on January 2, 2024, Hatten sent Massey a written contract reflecting 1.7% of the deal's net revenues as compensation to Massey and B3Company instead of the previously agreed 7%. (*Id.* at 6). The following month, February 2024, Massey attempted to negotiate the 1.7% amount up to 2.5–3%. (*Id.*). In March, Hatten informed Massey that he was to instead contract with ASM through Hauck's own company, TAC Georgia, LLC, who Massey learned was Hatten's actual employer rather than ASM. (*Id.*). Before Massey would ever see this proposed contract, on May 1, 2024, Matt Hoff, the CEO of ASM, informed Massey that Hatten was not authorized to negotiate the contract on behalf of ASM, that Hoff was not aware of Massey's involvement in the CareATC deal, and that he would not pay Massey under the contract. (*Id.* at 7). Plaintiffs have further alleged that, contrary to Hoff's statements, Hoff had

previously acknowledged Massey's involvement in multiple email correspondences between Massey and himself. (*Id*.).

Plaintiffs allege that, on June 6, 2024, Hauck sent a new proposed contract to Massey on behalf of TAC Georgia, LLC, the contents thereof Plaintiffs have not pleaded. (*Id*.). That same day, TAC Georgia, LLC wrote four checks to B3Company for services rendered over four months, totaling $23,866.63.[1] (*Id*. at 8). Plaintiffs allege that ASM is netting between $800,000 and $950,000 a month in revenues from CareATC. (*Id*.). Plaintiffs have now assert claims of breach, promissory estoppel, and fraud against ASM, Hoff, and Hatten seeking to recover the benefit of Massey's original bargain, 7% of ASM's net revenues from CareATC for the next five to ten years. Defendants have moved to dismiss all claims with prejudice.

## II.    Legal Standards

To survive dismissal, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The threshold for stating such a claim is plausibility: the complaint need not contain "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). In assessing a complaint, a court "must accept all the

---

[1]    The months listed in the Amended Complaint are October, November, December, and January of 2023 in that order. (Doc. 7 at 8). It seems likely, given this sequence, that Plaintiff intended to allege the month of January 2024 instead.

well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

The Federal Rules of Civil Procedure impose a heightened pleading standard on plaintiffs bringing claims for fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy this rule, a Plaintiff must allege "'the time, place and contents of the false representations, the identity of the party making the false statements, and the consequences' of the false representations." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023) (quoting *George v. Urban Settlement Services*, 833 F.3d 1242, 1254 (10th Cir. 2016)). However, federal plaintiffs need not plead every allegation of fraud with this level of particularity to survive a motion to dismiss, they need only include sufficient particularized allegations such that the "complaint, taken as a whole, 'sufficiently apprises' the defendant of its involvement in the alleged fraudulent conduct." *Id*. at 1280 (brackets omitted) (quoting *George*, 833 F.3d at 1257).

## III.    Discussion

Taking the factual content of Plaintiffs' pleadings as true, the Court cannot

reasonably infer that an agent with authority or apparent authority bound ASM into a contract with Massey. However, it is plausible that Hatten breached his implied warranty of authority—or misrepresented that authority—in contracting with Massey and is therefore liable for the benefit of the bargain Plaintiffs would have realized had Hatten actually been authorized. Notably, Plaintiffs have not asserted an implied warranty of authority theory in the Amended Complaint; they have instead done so, without applicable accompanying authority, in their Response to the Motion. (Doc. 30 at 8 (citing *Bayless v. Christie, Manson, & Woods Int'l, Inc.*, 2 F.3d 347 (10th Cir. 1993) (making no mention of the implied warranty of authority or agent liability to third parties)) ("Courts have held that an agent who exceeds their authority or acts without authority may be personally liable to the third party for breach of implied warranty of authority."")).[2] At the pleading stage, however, this is no impediment to advancing the case—the Court's role at this stage is to assess the sufficiency of the facts alleged to state a claim, not the sufficiency of the legal theories expressly asserted from those facts. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("Federal pleading rules. . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); *see also Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("'Cause of action' does

---

[2]  A party may not supplement its pleadings in its response to a motion to dismiss. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, Case No. 18-cv-00064-TCK-FHM, 2018 WL 4038117, at *9 n.4 (N.D. Okla. August 23, 2018). The Court only considers parties' arguments and authority to the extent they apply to Plaintiffs' allegations in the Amended Complaint. That Plaintiffs argue the implied warranty of authority in their Response, and that Defendants address that argument in their Reply, (Doc. 33 at 5), does not supplement Plaintiffs' Amended Complaint with any new factual allegations.

not appear in the Rules of Civil Procedure, which uses 'claim for relief' to denote a rejection of both common law and code approaches and a new, latitudinarian approach."). The Amended Complaint contains sufficient factual material to state a claim against Hatten, and so total dismissal is inappropriate.

### A.    Breach of Contract and Promissory Estoppel

Defendants make three arguments as to how Plaintiffs fail to state claims for breach of contract or promissory estoppel: (1) Plaintiffs have failed to allege Hauck and Hatten's apparent authority to enter the original contract; (2) Plaintiffs have not alleged all elements of either claim; and (3) Defendants Hatten and Hoff are not parties to the contract Plaintiffs seek to enforce. But the Court notes that Defendants' second argument is, in substance, a repetition of the first: they claim that, due to the defect of authority established in their first argument, the parties are not "capable of contracting" to establish breach nor was it reasonable for Massey to rely on their promise for 7% of net revenues. (Doc. 21 at 13–14). And so the Court addresses these first two arguments as one.

"Apparent authority results from a manifestation by the principal to a third person that another is his agent." *Stephens v. Yamaha Motor Co., Ltd., Japan*., 627 P.2d 439 (Okla. 1981). While such manifestation may be made directly to a third person, it may also be made indirectly such as "by signs or by advertising." *Id*. (quoting RESTATEMENT (SECOND) OF AGENCY § 8). Apparent authority only exists "to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." *Id*. "A principal's inaction creates apparent authority when it provides a basis for a third party reasonably to believe the principal intentionally acquiesces in the agent's representations or actions."

RESTATEMENT (THIRD) OF AGENCY § 3.03.[3]

Apparent authority is lacking on the face of the Amended Complaint. For ASM to have been bound by either Hauck or Hatten at the time they allegedly offered Massey 7% of net revenues from the CareATC deal, Plaintiffs must allege a reasonable belief premised on an action or inaction by ASM—not the purported agents—sufficient to manifest the intent to be bound at or before the time of contract formation. *See Gresham v. Town of Depew, Okla.*, No. 24-5021, 2025 WL 752337 (10th Cir. March 10, 2025) (quoting RICHARD A. LORD, 12 WILLISTON ON CONTRACTS § 35:21 (4th ed. 2024)) ("Courts have routinely held 'one who did not rely on an agent's apparent authority *at the time of the transaction* cannot later resort to the existence of that authority.'"). Plaintiffs' allegations of conduct attributable to ASM are almost entirely post-contract formation and therefore have no bearing on whether either Hauck or Hatten had apparent authority to bind ASM to the compensation agreement.

The only factual assertions in the Amended Complaint that tend to show Hauck and Hatten's apparent authority are those concerning their roles at ASM: the Amended Complaint indicates that Hatten is ASM's Chief Revenue Officer and that Hauck is the

---

[3] In applying state law, this Court must apply that law as would the state's highest court, and where there is no law on point, the Court must predict how that court would rule on the issue. *Grynberg v. Total S.A.*, 538 F.3d 1336 (10th Cir. 2008) (citing *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1142 (10th Cir.2008)). Oklahoma's highest court has seldom spoken on the implied warranty of authority and related issues, and to better predict how that court might rule, the Court finds persuasive the Restatement (Third) of Agency, which the Oklahoma Supreme Court has cited favorably in deciding matters of agency law. *See, e.g.*, *Williams v. Meeker N. Dawson Nursing, LLC*, 455 P.3d 908 (Okla. 2019) (quoting the third restatement to determine when notice to agent is effective as notice to principal).

Vice President of Business Development. (Doc. 7 at 2–3). "A principal may also make a manifestation by placing an agent in a defined position in an organization or by placing an agent in charge of a transaction or situation," RESTATEMENT (THIRD) OF AGENCY § 3.03 cmt. b, and "[a] person designated 'Vice President for. . .' has a customary level of authority over the specified functional area." *Id*. at § 3.03 cmt. e. (4) (discussing apparent authority of corporate officers, not necessarily managers within a limited liability corporation). That Massey was aware of Hauck and Hatten's positions at ASM could plausibly provide a reasonable basis for Massey to believe that they were authorized to transact the compensation agreement.

However, the Amended Complaint is ambiguous to the extent Plaintiff was aware of Hauck and Hatten's job titles and whether they held those titles at the time of the agreement: later allegations in the Amended Complaint state that, after forming the compensation contract, Massey learned that Hatten was not an employee of ASM but of TAC Georgia, LLC, of which Hauck was a member. (Doc. 7 at 6). Although the Court must "liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party," *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017), the Court cannot reasonably infer from the facts alleged that Massey, at the time of contract formation, believed Hauck and Hatten had authority to contract based on the titles ascribed to them in the Amended Complaint. As such, Plaintiffs have failed to allege facts sufficient to establish Hauck and Hatten's apparent authority to contract for or make promises on behalf of ASM, and Plaintiff's claims for breach of contract and

8

promissory estoppel against ASM are appropriately dismissed.[4]

Nor can Plaintiffs assert these claims against Hoff or Hatten directly:

When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal,

(1) the principal and the third party are parties to the contract; and

(2) the agent is not a party to the contract unless the agent and third party agree otherwise.

*Smoot v. B& J Restoration Servs., Inc.*, 279 P.3d 805, 815 (Civ. App. Okla. 2012) (quoting RESTATEMENT (THIRD) OF AGENCY § 6.01). Plaintiffs do not allege Hatten agreed to bind himself personally as a party to the contract, nor do Plaintiffs allege any direct involvement by Hoff in forming the contract, much less involvement in his personal capacity rather than as an agent of ASM. And so Plaintiff has failed to state claims for relief under contract and promissory estoppel against Hatten and Hoff.

**B. The Implied Warranty of Authority and Fraud**

Plaintiffs have plausibly alleged that Hatten either intended to bind ASM but in actuality could not, or that Hatten intentionally misrepresented his authority to bind ASM to procure Massey's services. Either possibility gives rise to a separate claim for breach of

---

[4]    Plaintiffs allege that "Hoff acknowledged he was aware of Massey's involvement in securing the partnership between ASM and CareATC," (Doc. 7 at 7), possibly claiming that ASM, through Hoff, ratified the compensation agreement "by failing to object to it or to repudiate it." RESTATEMENT (THIRD) OF AGENCY § 4.01. While the Amended Complaint indicates—and the Court must accept as true—that Hoff was aware of Massey's involvement, Plaintiffs do not allege that Hoff was specifically apprised of the details of the compensation agreement Massey now seeks to enforce. And so it is not plausible Hoff had "notice that others are likely to draw such an inference from silence" in failing to expressly disapprove of the agreement. *Id.*

9

the implied warranty of authority, or fraud. *American Sur. Co. v. Morton*, 122 P. 1103 (Okla. 1912) (quoting LAWSON ON CONTRACTS § 195) ("The agent's liability in such a case is either upon an implied warranty of authority on his part, when he acts in good faith, or upon the ground of fraud when he intentionally misrepresents his authority."); *see also* RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. b (noting that fraudulent misrepresentation claim can be made in addition to warranty of authority claim).

The factual allegations of the Amended Complaint plausibly state a claim for breach of the implied warranty of authority against Hatten.

> A person who purports to make a contract, representation, or conveyance to or with a third party on behalf of another person, lacking power to bind that person, gives an implied warranty of authority to the third party and is subject to liability to the third party for damages for loss caused by breach of that warranty, including loss of the benefit expected from performance by the principal, unless. . . the third party knows that the person who purports to make the contract, representation, or conveyance acts without actual authority.

RESTATEMENT (THIRD) OF AGENCY § 6.10; *see also* Okla Stat. tit. 23 § 39 ("The detriment caused by the breach of a warranty of an agent's authority, is deemed to be the amount which could have been recovered and collected from his principal if the warranty had been complied with, and the reasonable expenses of legal proceedings taken, in good faith, to enforce the act of the agent against his principal."). Plaintiffs claim Hatten "made the representation that ASM would directly pay Massey at a rate of seven percent (7%) of ASM's net revenues" for the proposed contract period, and that Massey relied on that representation believing that "Hatten was an employee of ASM and was fully authorized and empowered to speak and act on behalf of ASM and enter into the Contract with

Massey." (Doc. 7 at 3–4). Assuming as true that Hatten made this alleged representation, it is reasonable to infer that he intended Massey to believe he could so bind ASM to the compensation agreement, and so he impliedly warranted his authority to do the same. The Amended Complaint is not subject to dismissal insofar as Plaintiffs assert a claim against Hatten for breach of that warranty.

Relatedly, each of the factual allegations underlying a claim of breach support Plaintiffs' claim of fraud, but that claim further requires the allegation that Hatten intentionally misrepresented his authority to bind ASM to the agreement. While Defendants assert that Plaintiffs' fraud claims cannot advance because "they are duplicative of their breach of contract claim." (Doc. 21 at 16). However, Plaintiffs may plausibly state an alternative claim for fraud. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Hatten's alleged misrepresentation of authority would not give rise to a contract action against ASM, who Hatten had neither actual or apparent authority to bind, but in so making the misrepresentation, he may be liable for the foreseeable consequences of that deception. *See* RESTATEMENT (THIRD) OF AGENCY 7.01.

Defendants incorrectly argue that, to state a claim for fraud, Plaintiffs must allege "a false misrepresentation regarding Hatten's employment made as a positive assertion." (Doc. 33 at 7). Oklahoma's tort statutes provide for four kinds of actionable deceit:

> 1. The suggestion, as a fact, of that which is not true by one who does not believe it to be true.
>
> 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.

11

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4. A promise, made without any intention of performing.

OKLA. STAT. TIT. 76 § 3. Plaintiffs have plausibly alleged that Hatten knew he could not bind ASM to pay Plaintiffs the promised 7% of net revenues for facilitating the CareATC deal, but that he nonetheless purported to bind ASM to the compensation agreement. *See Citation Co. Realtors, Inc. v. Lyon*, 610 P.2d 788, 790 (Okla. 1980) ("Oklahoma follows the view that fraud can be predicated upon a promise to do a thing in the future when the intent of the promisor is otherwise.").

However, Defendants correctly assert the Amended Complaint does not specify the "who, what, where, when, and how" of Plaintiff's fraud claim sufficiently to apprise Hatten of his alleged involvement therein as to satisfy Fed. R. Civ. P. 9(b). *See Clinton*, 63 F.4th at 1277. Construing the Amended Complaint liberally, Plaintiffs have alleged that Hatten, along with Hauck, entered into an agreement with Massey in July of 2022 and misrepresented his authority to bind ASM to compensate Massey for facilitating a deal with CareATC. (Doc. 7 at 3). These allegations do not specify "the time, place, and contents of the false representations" on which Plaintiffs base their fraud claims. *See Clinton*, 63 F.4th at 1277. In particular, Plaintiffs have made no allegations as to the place or means of communication used between Hatten and Massey to form the agreement. While Plaintiff's fraud claim against Hatten may satisfy basic pleading standards, none of his fraud claims are accompanied by sufficiently particularized facts to satisfy the heightened pleading

standards applied to claims for fraud and mistake. Plaintiffs have thus failed to state a claim of fraud against ASM, Hatten, or Hoff.

## IV.    Conclusion

Based on the above analysis, Defendants' Motion to Dismiss (Doc. 21) is granted in part and denied in part. Plaintiff's claims for breach of contract, promissory estoppel, and fraud are dismissed without prejudice as to Defendants A-S Medication Solutions, LLC; Matt Hoff; and Todd Hatten. The Amended Complaint, however, states a claim for breach of the implied warranty of authority against Defendant Todd Hatten and is not dismissed.

In their Response, Plaintiffs request leave to amend their pleading. (Doc. 30 at 12). The Court should grant leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiffs may file a Second Amended Complaint no later than April 15, 2026.

IT IS SO ORDERED this 31 day of March, 2026.

_Christine D. Little_
Christine D. Little
United States Magistrate Judge

13